IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

ASHIE N. ALENÓ MERCADO, et al.,

Plaintiffs

v.                                                          CIVIL 03-1897 (PG)

ALEIDA VARONA-MÉNDEZ, et al.,

Defendants

MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

This matter is before the court on motion for summary judgment[1] filed by co-defendants Aleida Varona-Méndez (hereinafter "Varona") and Yolanda Zayas (hereinafter "Zayas") (collectively "co-defendants") on March 11, 2004.  (Docket No. 12.)  The plaintiffs submitted a response in opposition on December 20, 2004.  (Docket No. 65.)  The case was referred to me for report and recommendation on April 28, 2004.  (Docket Nos. 22, 23.)  After considering the arguments of the parties, the evidence in the record and the applicable law, it is my recommendation that the motion for summary judgment be GRANTED.

---

[1]The motion is titled "Motion to Dismiss and/or Summary Judgment."  Since the parties have submitted corresponding statements of contested and uncontested facts and evidence in support of their respective positions, I will consider the motion as one for summary judgment and analyze it pursuant to the standard set forth in Federal Rule of Civil Procedure 56(c).

CIVIL 03-1897 (PG)                    2

I.  BACKGROUND

The plaintiffs are a group of 57 individuals who worked at the Puerto Rico Administration for Child Support Enforcement (hereinafter "ASUME" for its Spanish acronym), as office clerks, child support specialists and officers.  (Amended Complaint, Docket No. 8.)  They bring the present action against co-defendants pursuant to 28 U.S.C. § 1983 claiming that they where deprived of the rights guaranteed to them by the First and Fourteenth Amendments of the United States Constitution when they were terminated from employment, namely that their transitory contracts were not renewed, by reason of their political affiliation.  (Id.)  The plaintiffs also invoke Puerto Rico Law No. 100, 29 P.R. Laws Ann. § 146 et seq. and Article 1802 of the Puerto Rico Civil Code, 31 P.R. Laws Ann. § 5141, as a basis for co-defendants' liability.  (Id.)  They seek an award of monetary damages as well as declaratory relief.  (Id.)

The specific allegation in the amended complaint is that commencing on February 22, 2001, co-defendant Varona, who at the time was ASUME's administrator, announced that she was terminating the employment of transitory ("transitorios") child support specialists and officers.  She described said employment action as "voluntary firings."  The plaintiffs were among the employees terminated.  They claim that such decision was politically motivated by reason of their membership in the New Progressive Party (hereinafter "NPP") or because they had been identified with the previous NPP

CIVIL 03-1897 (PG)                          3

administration.  They further contend that the decision to terminate them did not respond

to any reasonable budgetary justification and that it took place after the Governor had

expressed concern about the backlog of cases and about the amount of child support

payments that remained undistributed.  The plaintiffs also aver that the decision was

planned, directed and inspired by co-defendant Zayas, who at the time was the Secretary

of the Puerto Rico Department of the Family, with her express or tacit approval and in

furtherance of discriminatory policies of both agencies.  Finally, the plaintiffs maintain that

days before their termination, they were promised that they would be allowed to compete

for vacant career positions at the agency.  However, although most of the plaintiffs applied

for said permanent positions at ASUME, their applications have been rejected and the

agency has allegedly hired less experienced individuals identified with the Popular

Democratic Party (hereinafter "PDP") for these permanent positions.

    The co-defendants move for summary judgment on the following grounds:  (1) that

plaintiffs' transitory contracts were illegal, null and void; (2) that the amended complaint

fails to state a claim under section 1983 for violation of plaintiffs' constitutional rights; (3)

that the individual co-defendants are entitled to qualified immunity; (4) that co-defendant

Zayas cannot be held liable since ASUME has total and independent authority regarding

the personnel transactions of the agency; (5) that the court should abstain from

entertaining the claims of two of the co-plaintiffs inasmuch as they initiated state

CIVIL 03-1897 (PG)                    4

administrative proceedings; (6) and that the Puerto Rico law claims are time-barred. (Memorandum of Law, Docket No. 13.)  The plaintiffs in turn filed an opposition to co-defendants' motion claiming that the co-defendants have failed to establish the absence of genuine issues of material fact regarding the allegations of political discrimination.  On the contrary, it is plaintiffs' position that they have submitted sufficient evidence to controvert co-defendants' contention that the refusal to renew plaintiffs' transitory contracts was not based on discriminatory reasons.  I will address co-defendants' contentions *seriatim*, but first, the standard of review.

II.  SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c).  To succeed on a motion for summary judgment, the moving party must show that there is an absence of evidence to support the nonmoving party's position.  Celotex Corp. v. Catrett, 477 U.S. 317, 325 (1986).  Once the moving party has properly supported its motion, the burden shifts to the nonmoving party to set forth specific facts showing there is a genuine issue for trial and that a trier of fact could reasonably find in its favor.  Santiago-Ramos v. Centennial P.R. Wireless Corp., 217 F.3d 46, 52 (1st Cir. 2000).  The party opposing summary judgment must produce

CIVIL 03-1897 (PG)                        5

"specific facts, in suitable evidentiary form," to counter the evidence presented by the

movant.  López-Carrasquillo v. Rubianes, 230 F.3d 409, 413 (1st Cir. 2000) (quoting

Morris v. Gov't Dev. Bank of P.R., 27 F.3d 746, 748 (1st Cir. 1994)).  A party cannot

discharge said burden by relying upon "conclusory allegations, improbable inferences, and

unsupportable speculation."  Id.; see also Carroll v. Xerox Corp., 294 F.3d 231, 236-37 (1st

Cir. 2002) (quoting J. Geils Band Employee Benefit Plan v. Smith Barney Shearson, Inc.,

76 F.3d 1245, 1251 (1st Cir. 1993)) ("'[N]either conclusory allegations [nor] improbable

inferences' are sufficient to defeat summary judgment.").

        The court must view the facts in light most hospitable to the nonmoving party,

drawing all reasonable inferences in that party's favor.  See Patterson v. Patterson, 306 F.3d

1156, 1157 (1st Cir. 2002).  A fact is considered material if it has the potential to affect the

outcome of the case under applicable law.  Nereida-González v. Tirado-Delgado, 990 F.2d

701, 703 (1st Cir. 1993).

        III.  APPLICABLE LAW AND ANALYSIS

        I start with bedrock principles.  For a claim to be actionable under 42 U.S.C. § 1983,

sufficient facts must be alleged showing that the action complained was committed under

color of state law and that said conduct worked a denial of rights secured by the United

States Constitution.  Romero-Barceló v. Hernández-Agosto, 75 F.3d 23, 32 (1st Cir. 1996).

There are two aspects to the second prong:  (1) there must be an actual depravation of a

CIVIL 03-1897 (PG)                           6

federally protected right; and (2) there must be a causal connection between defendants'
conduct and the depravation of such right.  <u>Gutiérrez-Rodríguez v. Cartagena</u>, 882 F.2d
553, 559 (1st Cir. 1989).  Additionally, the causal connection element requires that
plaintiffs establish for each defendant, that the defendant's own actions deprived the
plaintiff of his or her protected rights.  <u>Id.</u> at 562 (holding that liability may not be
predicated upon a theory of *respondeat superior* because a supervisor can be liable only for
his own acts or omissions).  The recent decision in <u>Educadores Puertorriqueños en Acción</u>
<u>v. Rey-Hernández</u>, 367 F.3d 61, 66-67 (1st Cir. 2004), makes clear that "there are no
heightened pleading standards for civil right cases."

     In addition, it is well-settled that political patronage restrains the freedom of belief
and association, core activities protected by the First Amendment.  <u>Cosme-Rosado v.</u>
<u>Serrano-Rodríguez</u>, 196 F. Supp. 2d 117, 122 (D.P.R. 2002) (citing <u>Elrod v. Burns</u>, 427
U.S. 347, 354 (1976)).  In a trilogy of cases, <u>Elrod v. Burns</u>, 427 U.S. at 354, <u>Branti v.</u>
<u>Finkel</u>, 445 U.S. 507, 516 (1980) and <u>Rutan v. Republican Party of Ill.</u>, 497 U.S. 62, 75
(1990), the Supreme Court addressed the constitutionality of political patronage holding
that non-policymaking employees are protected under the First Amendment from adverse
employment decisions that are based on their political affiliations.  <u>Padilla-García v.</u>
<u>Rodríguez</u>, 212 F.3d 69, 74 (1st Cir. 2000).  A *prima facie* case of political discrimination
is established by demonstrating that plaintiff (1) engaged in protected conduct and (2) that

CIVIL 03-1897 (PG)                    7

such conduct was a substantial or motivating factor in the adverse employment decision. See Mt. Healthy City Sch. Dist. Bd. of Educ. v. Doyle, 429 U.S. 274, 287 (1977); see also Padilla-García v. Rodríguez, 212 F.3d at 74.  In other words, a plaintiff has to prove that his or her political persuasions were a substantial or motivating factor in the challenged action.  Ortiz-Piñero v. Rivera-Arroyo, 84 F.3d 7, 11-12 (1st Cir. 1996).  In this respect, to survive a motion for summary judgment, the plaintiff has to point to evidence in the record that would allow "a rational fact finder to conclude that the challenged personnel action occurred and stemmed from a politically based discriminatory animus."  Rivera-Cotto v. Rivera, 38 F.3d 611, 614 (1st Cir. 1994).

Once a *prima facie* case has been established, then the employer is given an opportunity to demonstrate that it would have taken the same action regardless of plaintiff's political beliefs.  Mt. Healthy City Sch. Dist. Bd. of Educ. v. Doyle, 429 U.S. at 287.  The burden-shifting framework in Mt. Healthy goes directly to causation.  Padilla-García v. Rodríguez, 212 F.3d at 74.  Therefore, even if a plaintiff meets his or her initial burden of establishing that political affiliation or beliefs were a motivating factor in the adverse employment decision, "that is insufficient to establish discrimination as a matter of law because the plaintiff's case at that point does not 'distinguish[] between a result caused by a constitutional violation and one not so caused.'"  Sánchez-López v. Fuentes-Pujols, 375 F.3d 121, 131 (1st Cir. 2004) (quoting Mt. Healthy City Sch. Dist. Bd. of

CIVIL 03-1897 (PG)                           8

Educ. v. Doyle, 429 U.S. at 286).  The plaintiffs thus need to show that there is a causal connection linking the adverse employment action to their political persuasions.  See Torres-Ocasio v. Meléndez, 283 F. Supp. 2d 505, 515 (D.P.R. 2003) (citing LaRou v. Ridlon, 98 F.3d 659, 662 (1ˢᵗ Cir. 1996)).  With these principles as framework, I analyze the specific contentions of the co-defendants.

A.  The Legality of Plaintiffs' Appointments

As stated above, the general rule in political discrimination cases is that a nonpolicymaking, nonconfidential government employee who is performing his or her job satisfactorily, cannot be terminated from said employment on the sole ground of his or her political affiliation.  Elrod v. Burns, 427 U.S. at 375 (Stewart, J., concurring).  This protection "applies to a local government's decision whether to renew the contract of a transitory employee."  Nieves-Villanueva v. Soto-Rivera, 133 F.3d 92, 98 (1ˢᵗ Cir. 1997) (citing Cheveras-Pacheco v. Rivera-González, 809 F.2d 125, 127-28 (1ˢᵗ Cir. 1987)). "[T]ransitory employees are protected from politically motivated non-renewals regardless of the number of years they have served."  Figueroa v. Aponte-Roque, 864 F.2d 947, 951 (1ˢᵗ Cir. 1989).  Simply put, the transitory nature of an individual's public employment cannot justify an adverse employment action solely based on the employee's political persuasions. Padilla-García v. Rodríguez, 212 F.3d at 75 n.4.

CIVIL 03-1897 (PG)                              9

In the present case, the co-defendants argue that plaintiffs' transitory contracts were illegal, null and void. Co-defendants submit that on May 16, 2000, the Central Labor Advisory and Human Resources Administration Office (hereinafter "OCALARH" for its Spanish acronym) issued a Special Normative Letter No. 1-2000 titled Prohibition to Effectuate Personnel Transactions during Pre and Post Electionary Period, Year 2000-2001. Subsequently, on June 23, 2000, OCALARH issued Special Memorandum No. 22-2000, where July 15, 2000 was set as the deadline to submit applications for personnel transactions. On June 29, 2000, Miguel A. Verdiales (hereinafter "Verdiales"), ASUME's administrator at the time, requested approval from OCALARH to create thirty (30) regular employment positions at the agency and a six-month extension for the already existing transitory contracts of transitory employees. Said contracts were to expire on November 30, 2000. Verdiales' requests were eventually denied by OCALARH.

Notwithstanding, during the months of June, July, and September, 2000, Verdiales made approximately 230 temporary appointments including the appointments of plaintiffs in this case. According to the co-defendants, since these temporary appointments were made without the approval of OCALARH and in violation of both Special Normative Letter No. 1-2000 and Special Memorandum No. 22-2000, they contravened Puerto Rico Public Service Personnel Act, and are therefore, null and void. Being null and void, the co-

CIVIL 03-1897 (PG)                          10

defendants conclude that plaintiffs' appointments did not create any right that may benefit the plaintiffs herein involved.

Plaintiffs respond arguing that their appointments were not null and void because they were not, as the co-defendants contend, hired during the electoral moratorium ("Veda Electoral").[2]  Plaintiffs argue that the evidence submitted by co-defendants themselves show that the moratorium for the 2000 elections ran from September 8, 2000 until January 7, 2001.  Only four of the plaintiffs' transitory contracts expired during the electoral moratorium and these plaintiffs were then hired as irregular personnel.  In addition, plaintiffs contend that they can maintain political discrimination claims even if

_____

[2]Article 4.7 of Puerto Rico's Public Personnel Act provides:

> For the purpose of guaranteeing the faithful application of the merit principle in public service during the period before and after elections, the authorities shall abstain from making any movement of personnel involving areas essential to the merit principle, such as appointments, promotions, demotions, transfers and changes in the category of the employees. This prohibition shall comprise the period of two (2) months before and two (2) months after General Elections are held in Puerto Rico. In the case of municipalities, it shall be understood that the prohibition extends until the second Monday of January after said General Elections. Exceptions may be made to this prohibition for urgent needs of the service, upon approval by the Director, pursuant to the standards established by the regulations.

3 P.R. Laws Ann. § 1337.

CIVIL 03-1897 (PG)                    11

their appointments are deemed null and void.  According to plaintiffs, any illegality of the appointments argument goes to the question of whether they had a cognizable property interest in their transitory positions.  It does not defeat a political discrimination cause of action.

To the extent that co-defendants assert the nullity of plaintiffs' appointments as a ground completely defeating plaintiffs' political discrimination claim, said assertion is erroneous.  Recently, in <u>Sánchez-López v. Fuentes-Pujols</u>, 375 F.3d at 130-33, the First Circuit expanded on the burden that a defendant has under <u>Mt. Healthy City Sch. Dist. Bd. of Educ. v. Doyle</u>, 429 U.S. at 286, to show that they would have taken the same employment action without regard to a political consideration.  The court held that while discrimination cannot be established as a matter of law by demonstrating that political affiliation was a motivating factor in the employer decision, <u>Sánchez-López v. Fuentes-Pujols</u>, 375 F.3d at 131, likewise, a defendants' <u>Mt. Healthy</u> burden is not discharged by simply showing that the appointments were illegal under local law.  <u>Id.</u> at 133.  Therefore, even assuming that the plaintiffs met their burden to show a *prima facie* case of political discrimination, something that I will discuss in the next section, I cannot conclude as a matter of law that the co-defendants defeat liability by simply showing that the

CIVIL 03-1897 (PG)                    12

appointments were null and void.[3]  See Acosta-Orozco v. Rodríguez-de-Rivera, 132 F.3d 97, 101 n.4 (1st Cir. 1997) (quoting Santiago-Negrón v. Castro Dávila, 865 F.2d 431, 436 (1st Cir. 1989)) ("'[A] new administration [cannot] use the "nullity" of appointments doctrine as a cover of discharges, transfers, and discrimination based solely on political affiliation.'"); see also Arizmendi-Corrales v. Rivera, 176 F. Supp. 2d 114, 120 (D.P.R. 2001).

      B.  Failure to State a Claim Under Section 1983

      *1. Due Process*

The co-defendants maintain that plaintiffs' Fourteenth Amendment claim must be dismissed because as transitory employees, they lack a property interest in their employment with ASUME.  The plaintiffs do not address such contention in their opposition to co-defendants' motion for summary judgment.

It is a longstanding principle of constitutional law that a state cannot discharge a public employee who possesses a property interest in continued employment without due process of law.  Cleveland Bd. of Educ. v. Loudermill, 470 U.S. 532, 538 (1985).  But the requirement that due process be safeguarded presupposes the existence of a constitutionally cognizable property interest.  See Bd. of Regents of State Colleges v. Roth, 408 U.S. 564,

_____

[3]I also assume for purposes of this discussion that the appointments were null and void as contended by the co-defendants.

CIVIL 03-1897 (PG)                      13

577 (1972).  The question of whether there is such a property interest must be answered looking at extra-constitutional sources:  these rights are "'created and their dimensions are defined by existing rules or understandings that stem from an independent source such as state law....'"  Correa-Martínez v. Arrillaga-Beléndez, 903 F.2d 49, 53 (1st Cir. 1990) (quoting Bd. of Regents of State Colleges v. Roth, 408 U.S. at 577).  In Puerto Rico, employees holding career or tenured positions have a property interest in continued employment.  Kauffman v. P.R. Tel. Co., 841 F.2d 1169, 1173 (1st Cir. 1988).  Transitory employees, on the other hand, cannot claim an expectation of continued employment and consequently no property interest in their jobs.  Gómez v. Rivera-Rodríguez, 344 F.3d 103, 111 (1st Cir. 2003).

Plaintiffs' amended complaint alleges a procedural due process cause of action.  (See Amended Complaint, Docket No. 8, at 60-61, ¶¶ 106-08.)  To the extent they claim that they were deprived of a constitutionally recognized property interest in their transitory appointments with ASUME, such a cause of action fails.  As transitory employees, the plaintiffs did not have such a property interest.  Process was not due and therefore, they could be fired (or in this case their contracts not renewed) "without any special ceremony."  Gómez v. Rivera-Rodríguez, 344 F.3d at 110.  Therefore, as to this issue, co-defendants' motion for summary judgment should be GRANTED.

CIVIL 03-1897 (PG)                    14

Nevertheless, that plaintiffs did not have a cognizable property interest in their employment does not necessarily mean that their First Amendment claim must also be dismissed.  "Public Employees can never be fired in violation of their First Amendment rights.  'Thus, the fact that a transitory employee does not have a reasonable expectation of renewal in his or her employment … does not defeat a First Amendment claim.'"  Id. at 111 n.5 (quoting Nieves-Villanueva v. Soto-Rivera, 133 F.3d at 98.)

*2. First Amendment*

The co-defendants claim that plaintiffs' political discrimination claim lacks factual support for they rely almost entirely on the contrast between their party affiliation and that of the co-defendants.  Co-defendants also argue that the amended complaint fails to allege that co-defendants Varona and Zayas knew of plaintiffs' political affiliation.  Additionally, it is co-defendants' position that the decision to terminate plaintiffs' transitory contracts would have been taken regardless of their political affiliation inasmuch as neutral, non-political factors such as the need for personnel in regional offices, the agency's fiscal budget, the availability of equipment, and the result of individual employee evaluations, were considered in the decision-making process.  As to this last criterion, the co-defendants specifically assert that the 230 transitory appointments made by the previous administrator were evaluated using the same evaluation process established by said previous administration.  Finally, the co-defendants contend that during the period of June 2001,

CIVIL 03-1897 (PG)                    15

to June 2002, ASUME made 43 appointments of regular employees and 36 temporary appointments. These employees were allegedly selected from a certified list of eligible candidates for each job classification in compliance with Puerto Rico Public Service Personnel law. According to the co-defendants, the plaintiffs cannot show that these candidates belonged to their rival political party.

In response, the plaintiffs argue that they have presented sufficient evidence to create genuine issue of material facts as to whether they were terminated because of their political affiliations. Plaintiffs also claim that they have demonstrated by indirect and circumstantial evidence, that the co-defendants knew of their political affiliation, which was visibly distinct from that of the new administration. Additionally, plaintiffs maintain that they can show that the employees hired to replace them are PDP activists. For that, 28 plaintiffs have submitted statements under the penalty of perjury alleging their replacement with rival party members. The plaintiffs further submit that the so called neutral factors used in evaluating renewal of transitory contracts is a pretext for political discrimination because the evidence submitted establishes at the very least a factual dispute. According to plaintiffs, 95% of them scored above the margin set forth by the evaluation criteria and still none of the plaintiffs were renewed. Additionally, the statement of former administrator Verdiales disproves any budgetary justification for the non-renewal since he

CIVIL 03-1897 (PG)                           16

states that the agency had sufficient funds to pay for plaintiffs' salaries. In all, the plaintiffs

contend that there are factual issues that must be submitted to the jury.

As noted above, the first hurdle that plaintiffs must clear is submitting sufficient

evidence to create a triable issue regarding political affiliation as a substantial or motivating

factor in the adverse employment decision. In this case, the evidence submitted fails to

show that plaintiffs' political affiliation was known by the co-defendants. Additionally, the

plaintiffs conclusorily assert that they were replaced by members of the PDP. Most of the

plaintiffs submitted "Statements Under the Penalty of Perjury" (Docket No. 70) where

they almost uniformly state that they are "well known NPP activist," that said fact was well

known by their superiors and co-workers, that most of them worked in the 2000 campaign

or as electoral officers the day of the election, and that their functions are being performed

by PDP activists or by persons "hostile to the NPP and statehood."[4] (Id.) Clearly, these

statements alone, without any other evidence establishing political affiliation as a

substantial or motivating factor, are insufficient to satisfy plaintiffs' *prima facie* burden. See

Vázquez-Valentín v. Santiago-Díaz, 385 F.3d 23, 37-38 (1st Cir. 2004); see also González-

de-Blasini v. Family Dep't, 377 F.3d 81, 85-86 (1st Cir. 2004). In Gonzalez-de-Blasini, for

instance, the court of appeals affirmed the entry of summary judgment against the

---

[4]The NPP is the political party that advocates statehood for Puerto Rico.

CIVIL 03-1897 (PG)                    17

plaintiff—and in favor of coincidentally one of the co-defendants in this case, Zayas—stating that plaintiff

> adduced no evidence that the defendants knew she was a member of the NPP. She attempts to bolster her political discrimination cause of action by alleging that Zayas and Maldonado must have been aware of her political affiliation because she was a well-known supporter of the NPP in the community, had held a previous trust position under the NPP administration, and was allegedly demoted shortly after the PDP assumed power.

Gonzalez-de-Blasini v. Family Dep't, 377 F.3d at 85-86.  Like plaintiff in Gonzalez-de-Blasini, plaintiffs' showing in this case is not much stronger.

A *prima facie* case of political discrimination cannot be established by the sole, conclusory allegation that they were well-known NPP activists.  See Vázquez-Valentín v. Santiago-Díaz, 385 F.3d at 37-38.  The evidence in the record shows that the plaintiffs were political activists and worked in election campaigns, etc., in different municipalities. Some of the municipalities are remote from the San Juan area such as Ponce, Aguadilla, Jayuya and Isabela, to mention a few.  (See Docket No. 70.)  It is not a reasonable inference that the alleged common knowledge of the NPP affiliation transferred to co-defendants Varona and Zayas.  It is similarly unreasonable to equate such knowledge, if any, to the allegation that it was necessarily considered in not renewing plaintiffs contracts. Also unreasonable is the assertion, with nothing to substantiate the same, that because ASUME's administrator met with associate directors, information about plaintiffs' political

CIVIL 03-1897 (PG)                              18

activism "could have been transmitted," to put it in plaintiffs' words.  (Docket No. 77, at 6.)

In addition, the affidavits submitted by the plaintiffs state that their functions "are being performed" by PDP members or sympathizers.  Although the names of these alleged PDP affiliates are given, nothing is provided in the form of the date in which they were hired, whether they were hired immediately after the discharge to replace the plaintiffs or to the contrary, whether these employees were already employed by ASUME and merely took over plaintiffs' functions.  (Docket No. 70.)  Finally, the plaintiffs submit a number of letters in which well known politicians (members of the PDP) make recommendations for employment to co-defendant Varona as to certain individuals.  (Docket No. 70, Exs. 67-92.)  However, these recommendations do not prove that the plaintiffs were replaced by PDP members because the earliest letter of recommendation is dated July 9, 2003.  (Docket No. 70, Ex. 86.)  That is over two years after the plaintiffs' contracts were terminated.  Thus, the plaintiffs cannot claim that these letters are direct or indirect evidence that political affiliation was a substantial or motivating factor in their non-renewals.

Unquestionably, the plaintiffs need not produce direct evidence of co-defendants' motivation.  Circumstantial evidence is acceptable as long as it is sufficient "to take the asserted claim out of the realm of speculative, general allegations."  Kauffman v. P.R. Tel. Co., 841 F.2d at 1173 n.5.  In this case, the evidence submitted is not sufficient.

CIVIL 03-1897 (PG)                    19

Consequently, the plaintiffs have failed to established a *prima facie* case of political discrimination.[5]  "Merely juxtaposing a protected characteristic--someone else's politics--with the fact that plaintiff was treated unfairly is not enough to state a constitutional claim."  Correa-Martínez v. Arrillaga-Beléndez, 903 F.2d at 58.  I recommend that co-defendants' motion for summary judgment be GRANTED.[6]

        C.  State Law Claims

        In light of the fact that I have recommended the granting of co-defendants' motion for summary judgment as to all the federal claims asserted in the amended complaint, I also recommend dismissal of the remaining state-law causes of action.  See González-de-Blaisni v. Family Dep't, 377 F.3d at 89 ("Under 28 U.S.C. § 1367, '[a] district court may decline

_____

[5]As to the element of causation, the plaintiffs are correct that there may be a factual dispute as to whether the co-defendants would have taken the same action regardless of political considerations.  For example, there may be a factual controversy regarding the budgetary justifications given by the defendants not to renew the plaintiffs' contracts.  It could also be for the jury to decide whether the evaluation used by the co-defendants to determine which transitory contracts would be renewed, was a neutral, non-political basis.  Although the plaintiffs appear to admit that it was the same evaluation process used by the previous administration.  In any event, we do not get to the issue of causation because as explained above, the plaintiffs failed to establish a *prima facie* case of political discrimination.  See Sánchez-López v. Fuentes-Pujols, 375 F.3d at 131 (discussing the issue of causation only after assuming that the plaintiff met their initial burden of showing that political affiliation was the motivating factor for the employment decision).

[6]In view of this recommendation, I find it unnecessary to address co-defendants' remaining arguments; namely whether the individual co-defendants are entitled to qualified immunity, whether co-defendant Zayas cannot be held liable, and whether the court should abstain with respect to the claims of two of the plaintiffs.

CIVIL 03-1897 (PG)                              20

to exercise supplemental jurisdiction' if 'the district court has dismissed all claims under which it has original jurisdiction.'"); see also Claudio-Gotay v. Becton Dickinson Caribe, Ltd., 375 F.3d 99, 104-05 (1st Cir. 2004); Rodríguez v. Doral Mortgage Corp., 57 F.3d 1168, 1177 (1st Cir. 1995) ("As a general principle, the unfavorable disposition of a plaintiff's federal claims at the early stages of a suit, well before the commencement of trial, will trigger the dismissal without prejudice of any supplemental state-law claims."). Therefore, it is also unnecessary to address the timeliness issue raised by the co-defendants.

IV.  CONCLUSION

In view of the above, it is my recommendation that co-defendants' motion for summary judgment be GRANTED and that the case be dismissed in its entirety.

Under the provisions of Rule 72(d), Local Rules, District of Puerto Rico, any party who objects to this report and recommendation must file a written objection thereto with the Clerk of this Court within ten (10) days of the party's receipt of this report and recommendation.  The written objections must specifically identify the portion of the recommendation, or report to which objection is made and the basis for such objections. Failure to comply with this rule precludes further appellate review.  See Thomas v. Arn, 474 U.S. 140, 155 (1985); Davet v. Maccorone, 973 F.2d 22, 30-31 (1st Cir. 1992); Paterson-Leitch Co. v. Mass. Mun. Wholesale Elec. Co., 840 F.2d 985 (1st Cir. 1988); Borden v. Sec'y of Health & Human Servs., 836 F.2d 4, 6 (1st Cir. 1987); Scott v. Schweiker, 702

CIVIL 03-1897 (PG)                          21

F.2d 13, 14 (1st Cir. 1983); <u>United States v. Vega</u>, 678 F.2d 376, 378-79 (1st Cir. 1982);

<u>Park Motor Mart, Inc. v. Ford Motor Co.</u>, 616 F.2d 603 (1st Cir. 1980).

     At San Juan, Puerto Rico, this 26th day of January. 2005.


                              S/ JUSTO ARENAS
                    Chief United States Magistrate Judge